|                                                      |                                                     |
|------------------------------------------------------|-----------------------------------------------------|
| **UNITED STATES DISTRICT COURT**                     |                                                     |
| **DISTRICT OF NEVADA**                               |                                                     |
| Maritza Moses, and others similarly situated,        | Case No.: 2:17-cv-03071-JAD-PAL                    |
|     Plaintiff                    | **Order Granting Renewed Motion to Compel Arbitration and Closing Case** |
| v.                                                   |                                                     |
| Lending Club,                                        | [ECF No. 20]                                        |
|     Defendant                    |                                                     |

Maritza Moses sues LendingClub Corporation for allegedly violating the Fair Credit Reporting Act (FCRA) by making an "Account Review" inquiry of her credit report after her personal liability for the two accounts that LendingClub serviced had been discharged in bankruptcy.[1] LendingClub contends that Moses agreed to arbitrate this dispute. LendingClub previously moved to compel Moses to arbitrate her claim,[2] but buried relevant evidence in its reply brief, so I "denied [the motion] without prejudice to LendingClub's ability to reurge it with a fully developed complement of the supporting evidence."[3]

LendingClub now renews its motion to compel arbitration and to dismiss Moses's claim without prejudice.[4] LendingClub has met its burden to show that valid agreements to arbitrate exist between it and Moses that cover Moses's claim. I therefore grant LendingClub's motion in its entirety, compel the parties to arbitrate Moses's claim consistent with their agreements, dismiss her claim without prejudice, and close this case.

---

[1] ECF No. 1. The defendant insists that Moses incorrectly named "Lending Club" and that it is named "LendingClub Corporation." I defer to the more specific "LendingClub Corporation."
[2] ECF No. 9.
[3] ECF No. 19.
[4] ECF No. 20.

**Discussion**

**A.     Standard for compelling arbitration under the FAA**

The Federal Arbitration Act (FAA) states that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy" arising out of the contract or transaction "shall be valid, irrevocable, and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract."[5]  The FAA permits any party who is "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" to petition any federal district court for an order compelling arbitration in the manner provided for in the arbitration agreement.[6]

"By its terms, the [FAA] 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'"[7]  "The court's role under the [FAA] is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."[8]  The party seeking to compel arbitration has the burden to show that both of these questions must be answered in the affirmative.[9]  "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms."[10]

---

[5] 9 U.S.C. § 2.

[6] *Id.* at § 4.

[7] *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)).

[8] *Id.*

[9] *Nguyen v. Barnes and Noble, Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014); *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015).

[10] *Chiron Corp.*, 207 F.3d at 1130.

### *1. Valid written arbitration agreements exist between the parties.*

To show that a written arbitration agreement exists between the parties, LendingClub provides two declarations of Rex Dontogan, a senior supervisor of consumer advocacy for LendingClub, along with documents that Dontogan declares are true and correct copies of records that LendingClub keeps in the ordinary course of business.[11] Dontogan "[is] familiar with LendingClub's process for obtaining assent to its Borrower Membership Agreement and for receiving and documenting borrower requests to opt out of the Arbitration Provisions contained in the Borrower Membership Agreements and the Loan Agreements . . . ."[12]

Dontogan explains and provides examples of the various screens that applicants see when applying for LendingClub loans.[13] At the bottom of the screen entitled "Loan Rate & Terms" is a box stating that "Clicking the box below constitutes your electronic signature and acceptance of: the <u>Loan Agreement</u>, the <u>Borrower Membership Agreement</u> and the <u>Credit Score Notice</u>."[14] The names of the two agreements and the one notice are hyperlinks that, if clicked, bring up the document for the applicant to review. If the documents are acceptable, the applicant must check a box, which appears to the left of the notice and hyperlinks, before clicking the big green "next" button to continue onto the next screen and further into the application process.[15] According to Dontogan, the platform's design prevents applicants from moving to the next screen unless they check the box indicating that they accept the agreements. So, "[Moses] would not have been able to move onto the next screen of the application process[,]" complete that process, "or obtain

---

[11] ECF No. 20-1.
[12] *Id.* at 2, ¶ 1.
[13] ECF No. 20-3.
[14] *Id.* at 3, ¶ 2.
[15] *Id.* at ¶ 3.

a LendingClub loan unless she affirmatively indicated her acceptance to the Loan agreement and the Borrower Membership Agreement by checking a box."[16] It is undisputed that Moses obtained two loans—the first ending in 2036 and the second ending in 2115.

Dontogan explains that LendingClub maintains electronic records to document the date that an applicant executes the lending documents and checks the acceptance box on the loan application page. Those records "are made at the time [that] the applicant applies for the loan, from information [that is] transmitted by the applicant through LendingClub's website lending platform."[17] Dontogan declares that LendingClub's business records show that Moses accepted the Borrower Membership Agreement and Loan agreement for the 2036 loan on September 18, 2014,[18] and that Moses accepted the Borrower Membership Agreement and Loan Agreement for the 2115 loan on April 2, 2015.[19]

Dontogan provides what he declares are true and correct copies of the Borrower Membership Agreements and Loan Agreements for the two loans that Moses took out.[20] Immaterial differences aside, each of the four agreements contains a paragraph entitled "Arbitration" that provides that "Either party to this Agreement, or WBK, [or LendingClub] may, at its sole election, require that the sole and exclusive forum and remedy for resolution of a Claim be final and binding arbitration pursuant to this section 18 . . . unless you opt out as

---

[16] *Id.* at ¶ 4.
[17] *Id.* at ¶ 5.
[18] *Id.* at 4, ¶ 6.
[19] *Id.* at ¶ 7.
[20] ECF No. 20-1 at 3, ¶¶ 2–5; ECF No. 20-1 at 6–9 (Borrower Membership Agreement for loan 2036); ECF No. 20-1 at 11–14 (Borrower Membership Agreement for loan 2115); ECF No. 20-1 at 16–22 (Loan Agreement for loan 2036); ECF No. 20-1 at 24–30 (Loan Agreement for loan 2115).

4

provided in section 18(b) below."[21] "Claim" is broadly defined to "include any past, present, or future claim, dispute, or controversy . . . relating to or arising out of this Agreement, any Note, the Site, and/or the activities or relationships that involve, lead to, or result from any of the foregoing, including . . . the validity or enforceability of this Arbitration Provision . . . ."[22] The agreements also provide that the arbitration should be administered by the American Arbitration Association (AAA) or JAMS under the rules and policies of the selected administrator.[23] The agreements further state that the FAA governs their interpretation and enforcement.[24]

Moses responds that LendingClub's proffer falls short of demonstrating that a written agreement to arbitrate exists between her and LendingClub.[25] She argues that the Ninth Circuit recently "rejected precisely the same evidence" in a split decision in *Carlos v. Patenaude & Felix A.P.C.*[26] Carlos sued a law firm alleging that it had violated the Fair Debt Collection Practices Act when it filed a time-barred collection action against him and failed to disclose that the claim was time barred. The timeliness of the action hinged on whether the contract was written or unwritten because the statute of limitations under Virginia law is five years for a written contract and three years for an unwritten contract. The issue in *Carlos* was whether the district court erred when it granted summary judgment in favor of the law firm on the basis that

---

[21] ECF No. 20-1 at 7–8, ¶ 18(a); ECF No. 20-1 at 12–13, ¶ 18(a); ECF No. 20-1 at 18–19, ¶17(a); ECF No. 20-1 at 26, ¶ 17(a).

[22] *See, e.g.*, ECF No. 20-1 at 8, ¶ 18(a).

[23] *See, e.g., id.* at ¶ 18(c).

[24] *See, e.g., id.* at ¶ 18(g).

[25] Moses also contends that she is a nonsignatory like the plaintiff in *Comer v. Micor, Inc.*, who was a participant in an ERISA plan but not a signatory to the plan documents, but she doesn't explain why the facts of that case apply here. ECF No. 23 at 9 (citing *Comer v. Micor, Inc.*, 436 F.3d 1098 (9th Cir. 2006)).

[26] ECF No. 23 at 9 (citing *Carlos v. Patenaude & Felix A.P.C.*, 736 Fed. Appx. 656, 2018 WL 2714576 (9th Cir. June 6, 2018)).

5

the credit-card agreement between Carlos and Capital One constituted a written contract, triggering a five-year statute of limitations.[27]

To show that Carlos had electronically signed the credit-card agreement, the law firm offered a Capital One employee's declaration that "to submit an online application, the consumer must click a box affirming that [he] read and agreed to the Important Disclosures."[28] The law firm also provided "a screen shot of Capital One's internal records, which purport[ed] to reflect the information that Carlos entered when submitting his online application for the credit card."[29] The Ninth Circuit explained that "[t]he screen shot indicates that Carlos 'signed' something but does not indicate what he signed."[30] The court pointed out that the law firm "ha[d] not offered a screen shot depicting the screen that Carlos would have seen when submitting his online application."[31] The court also stressed that "Carlos vehemently denies affixing any electronic signature to the application or clicking anything indicating that he agreed to be bound by the credit card agreement."[32] Based on this evidence, the panel's majority held that whether Carlos had electronically signed the online application was genuinely disputed, so it reversed the district court's grant of summary judgment in favor of the law firm and remanded the case for further proceedings.[33]

---

[27] *Carlos*, 2018 WL 2714576, at *1.
[28] *Id.* at *2.
[29] *Id.*
[30] *Id.*
[31] *Id.*
[32] *Id.*
[33] *Id.* at *2–3. Judge McKeown dissented, explaining that "Carlos went through Capital One's credit card process, input his name, birth date, Social Security Number, sent his personal information to Capital One, checked a consent disclosure box stating [that] he had read and understood the terms of his credit card agreement, received mail incorporation the credit card contract terms and then activated his card over the phone using the designated code, added a

6

Moses's reliance on *Carlos* is misplaced. The decision is unpublished, so it isn't precedent except as provided by Ninth Circuit Rule 36-3. But even if *Carlos* were binding precedent, it has no application to this case because the facts are materially distinguishable. Unlike Carlos, who "vehemently" denied affixing his electronic signature to the credit card agreement or clicking anything indicating that he agreed to that agreement's terms,[34] Moses merely "do[es] not recall" any of the agreements or checking a box to indicate that she accepted the terms.[35] Unlike the law firm's screen shots and documents, which did not identify the terms to which Carlos had agreed, LendingClub provides exemplars of the documents and screens that it contends Moses was presented with when she applied for and received the two loans.[36] LendingClub's exemplars show that the agreements and notices were identified and hyperlinked so that Moses could review them before clicking the box indicating that she accepted the terms and then clicking the "next" button to go onto the next screen and further into the application process. LendingClub has thus demonstrated that valid written arbitration agreements exist between the parties.

### 2. *Moses's claim falls within the scope of the arbitration agreements.*

LendingClub argues that the arbitration agreements are broad enough to encompass Moses's claim that LendingClub violated FCRA when it made an "Account Review" inquiry of her credit report after her personal liability for the two accounts that LendingClub serviced had

---

payment protection plan to his account, and use his card repeatedly over a year." *Id.* at *3 (McKeown, J., dissenting). Judge McKeown concluded from "[t]his pile of evidence [that] there is no genuine issue of material fact that there was a written contract under Virginia law." *Id.* (McKeown, J., dissenting).

[34] *Id.*

[35] ECF No. 23-1 at 3, ¶¶ 6–8 (ironically, Moses's declaration is not signed).

[36] ECF Nos. 20-1; 20-3.

7

been discharged in bankruptcy. As proof, LendingClub points to the broad definition of "claim" in the arbitration agreements, which includes any dispute or controversy between Moses and LendingClub "relating to or arising out of [the Borrower Membership or Loan Agreements], any Note, the Site, and/or the activities or relationships that involve, lead to, or result from any of the foregoing . . . ."[37] LendingClub describes Moses's claim as one pertaining to LendingClub's alleged "activities" of "making an 'Account Review' inquiry of her consumer report for her previously discharged LendingClub loan accounts."[38] Moses does not attempt to persuade me that LendingClub's representation of the scope of the arbitration clause or the nature of her claim is wrong, and I am satisfied that LendingClub's representations are accurate. LendingClub has demonstrated that Moses's claim falls within the scope of the arbitration agreements. Because LendingClub has met its burden on both elements, I grant its motion to compel arbitration.

**B.  I dismiss this case without prejudice.**

Having found that the arbitration agreements are valid and encompass Moses's claim, I can either stay this case pending the arbitration or dismiss it without prejudice.[39] LendingClub moves to dismiss this case.[40] Moses doesn't directly address this issue other than to reiterate her arguments against the motion to compel arbitration.[41] Because I find that Moses's only claim falls within the arbitration agreements' scope, I dismiss her claim without prejudice and order the parties to arbitrate that claim in accordance with their agreements.

---

[37] ECF No. 20 at 11 (quoting the Borrower Membership Agreements).

[38] *Id.*

[39] 9 U.S.C. § 3; *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988).

[40] ECF No. 20 at 12.

[41] ECF No. 23 at 10 n.60.

8

**Conclusion**

Accordingly, IT IS HEREBY ORDERED that LendingClub's motion to compel arbitration **[ECF No. 20] is GRANTED** and Moses's claim is **DISMISSED without prejudice.** The parties are ordered to arbitrate Moses's claim in compliance with the arbitration agreements.

The Clerk of Court is directed to CLOSE this case.

Dated: February 6, 2019

_____
U.S. District Judge Jennifer A. Dorsey